IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2000 AUG 30 P 2: 19

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | |
|---|---|
| OHIO ELECTRONIC ENGRAVERS, INC. * | |
| Plaintiff * | |
| * | |
| v. * | Civil No. JFM-97-4299 |
| * | |
| DAMPSKIBSSELSKABET AF 1912 * | |
| AKTIESELSKAB AND * | |
| AKTIESELSKABET * | |
| DAMPSKIBSSELSKABET SVENDBORG * | |
| trading as MAERSK LINE * | |
| in personam, et al., * | |
| Defendants * | |

\*\*\*\*\*

## MEMORANDUM

Plaintiff Ohio Electronic Engravers, Inc. ("OEE") has instituted this admiralty and maritime claim against both Circle International, Inc. ("Circle") and Dampskibsselskabet AF 1912 ("Maersk"). The claims arise from the alleged defective packaging and shipment of an engraving machine which was later found to be corroded. Both Circle and Maersk have filed motions for summary judgment. For the reasons that follow, both motions will be granted.

I.

OEE, a manufacturer and seller of engraving machines, hired Circle to package an engraving machine and prepare it for shipment to a customer in Casablanca, Morocco. Circle used its "premier pack," surrounding the engraving machine with packages of desiccant and "shrink-wrapping" the machine with a polyethylene wrap treated with a rust inhibiting chemical. A wooden crate was then built around the machine, secured with metal banding, and then placed

1

into a sealed ocean container. In mid-December 1996, the container was placed aboard a Maersk Line ship in Norfolk. After being transferred to another Maersk ship in Spain, the package—in good external condition—arrived in Casablanca on January 14, 1997. The package was processed by Morocco Customs authorities and picked up by the customer sometime between January 15 and February 4, 1997. It was not until four months later, in late May 1997, that the customer called OEE to report the corrosion on the machine. OEE was unable to retrieve any of the packaging material from the customer after being notified of the damage.

## II.

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro 56(c). I must determine whether Circle and Maersk have demonstrated "that there is an absence of evidence to support [OEE's] case." Celotex v. Catrett, 477 U.S. 317, 325 (1986). I find that both parties have met this burden.

## III.

OEE claims that Circle was negligent and breached its warranty of workmanlike performance in its packaging of the engraving machine. OEE alleges that Circle used an unsuitable packaging method for the shipment at issue, thus allowing for the "intrusion of salt air" and subsequent corrosion. The only evidence that OEE presents in support of the allegation is an affidavit of an expert submitted for the first time in opposition to Circle's motion for summary judgment.

The affidavit clearly is untimely. Discovery had closed long before it was submitted. OEE's excuse is that it was not until the deposition of Ron Turner was completed on February

2

28, 2000 that Circle learned a critical fact leading it to retain its expert: that the engraving machine was packaged four months before it was shipped overseas. Assuming the materiality of this fact, what OEE ignores is that Turner had been its own employee who had been prepared for his deposition by OEE's own counsel. Moreover, OEE knew, or should have known, from the first session of Turner's deposition held in September 1999, that the engraver may have been packaged by Circle in early September 1996. Finally, even if it was the completion of Turner's deposition on February 28, 2000 that triggered OEE's knowledge that it should retain an expert, OEE provides no justification as to why it did not produce an expert report until May, after defendants had filed their summary judgment motions.[1] For these reasons the expert's affidavit will be stricken. Without that affidavit OEE has not presented evidence to substantiate its claim and cannot withstand Circle's summary judgment motion.[2]

IV.

OEE acknowledges the weakness of its claim against Maersk Line. Nonetheless, OEE claims that "discovery should not be cut off" at this point because of a purported need to find more evidence that "may have a bearing on the testimony of experts with regard to the cause of the damage." Pl.'s Opp'n at 3. This contention is without merit. Pursuant to Rule 56(f), a court may deny a motion for summary judgment or order a continuance if a nonmovant—through

---

[1] It is also to be noted that the expert's report is deficient under Rule 26(a)(2) in that it was not signed by the expert, failed to disclose his compensation, does not identify any publications he authored, or any other cases in which he has testified as an expert at trial or at deposition.

[2] In light of my ruling, I need not consider the other technical arguments made by Circle that the Marine Office of America Corporation may not properly bring this action as subrogee and that, otherwise assuming its liability, Circle is not liable for more than $50 under the contract between Circle and OEE.

affidavits—shows that additional discovery is necessary to allow for a proper opposition to a motion for summary judgment. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). The nonmovant, however, "may not simply assert in its brief that discovery [is] necessary and thereby [withstand] summary judgment when if fail[s] to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995); see also Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 972 n.3 (4th Cir. 1990) (finding that if plaintiff were genuinely concerned that summary judgement was premature because it had inadequate time discovery, he should have sought relief under Rule 56(f)). Here, OEE has not complied with the established procedural requirements. Moreover—contrary to OEE's assertions—nothing in the record suggests that further discovery would yield evidence showing "that the container was dropped in the water or otherwise exposed to salt water while in [Maersk's] custody." Pl.'s Opp'n at 3.

A separate order effecting the rulings made in this memorandum is being entered herewith.

Date: August 30, 2000

                                        J. Frederick Motz
                                        United States District Judge